Thomas P. Riley, SBN 194706
LAW OFFICES OF THOMAS P. RILEY
First Library Square
1114 Fremont Avenue
South Pasadena, CA 91030-3227

Tel:  626-799-9797
Fax: 626-799-9795
TPRLAW@att.net

Attorneys for Plaintiff
J & J Sports Productions, Inc.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| J & J SPORTS PRODUCTIONS, INC., | Case No. 2:11-cv-03653-WDK-PLA |
|---|---|
| Plaintiff, | |
| vs. | PLAINTIFF'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW |
| PEARL JACKSON a/k/a PEARL MARI JACKSON, et al., | FOR:   Honorable William D. Keller |
| Defendants. | |

TO THE HONORABLE WILLIAM D. KELLER, THE DEFENDANT/S, AND THEIR ATTORNEY/S OF RECORD:

Pursuant to Local Rule 16, the Court's Order re: Scheduling Order filed August 12, 2015, the Plaintiff hereby files its Memorandum of Contentions of Fact and Law for the consideration of this Honorable Court.

**I.     CLAIMS AND DEFENSES**

**(a) Statement Of Claims Plaintiff Has Pleaded And Plans To Pursue.**

Claim 1: Defendants Pearl Jackson a/k/a Pearl Mari Jackson and Annette Golden violated federal telecommunications statutes Title 47 U.S.C. Section 605, *et seq*.

Claim 2: Defendants Pearl Jackson a/k/a Pearl Mari Jackson and Annette Golden violated Title 47 USC Section 553, *et seq*.

Claim 3: A common law count of Conversion is also set forth in the complaint as is a claim that the Defendants violated California Civil Code Section 17200.

Claim 4: Defendants Pearl Jackson a/k/a Pearl Mari Jackson and Annette Golden violated California Business and Professions Code Section 17200.

**(b) The Elements Required To Establish Plaintiff's Claim.**

Points Of Law – Federal Statutory Claims.

1. Title 47 of the United States Code Section 553 provides, in pertinent part, that "[n]o person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law." 47 U.S.C. § 553(a)(1) (emphasis added).

2. Title 47 of the United States Code Section 605 provides that:

No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person.  No person not be titled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for benefit of another not entitled thereto. No person having received any intercepted radio communication or having become acquainted with the contents, substances, purport, effect, or meaning of such communication (or any part thereof) knowing that such communication was intercepted; shall divulge or publish the existence, contents, substance, purport, effect, or meaning of such communication (or any part thereof) or use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.

47 U.S.C. § 605(a).

3. 47 U.S.C. §§ 553 and 605 provide ample statutory protection against the theft of communications such as the Program in the instant case. See DirecTV, Inc. v. Webb, 545 F.3d 837, 844 (9th Cir. 2008); California Satellite Systems v. Seimon, 767 F.2d 1364 (9th Cir. 1985).

4. 47 U.S.C. §§ 553 and 605 are strict liability statutes. See 47 U.S.C. § 553(c)(3)(C); 47 U.S.C. § 605(e)(3)(C)(iii) (allowing for reduction in damages when it is determined that violator was

Page 2

"not aware and had no reason to believe that his acts constituted a violation . . .").[1] J & J Sports Productions, Inc. v. Mendoza-Gowan, 2011 WL 1544886 at *6 (N.D.Cal. April 25, 2011) (emphasis added) ("[I]if it is later found that defendant acted unknowingly, damages under Section 553 or Section 605 may be reduced . . . . *This point is irrelevant, however, for determining liability.*")(emphasis added); Joe Hand Promotions, Inc. v. Easterling, 2009 WL 1767579, *4 (N.D.Ohio June 22, 2009) ( "[t]here are no mens rea or scienter elements for a non-willful violation of 47 U.S.C. § 605(a), or its counterpart governing unauthorized interception of cable service under 47 U.S.C. § 553(a) . . . [t]hese are strict liability offenses with no good faith defense."); Kingvision Pay-Per-View Ltd. v. Williams, 1 F.Supp.2d 1481 (S.D.Ga. 1998).

5.  "Any person aggrieved…may bring a civil action in a United States district court or in any other court of competent jurisdiction." 47 U.S.C. § 553(c)(1); 47 U.S.C. § 605(e)(3)(A). "[T]he term 'any person aggrieved' shall include any person with proprietary rights in the intercepted communication by wire or radio[.]" 47 U.S.C. § 605(d)(6). Section 553 does not define "aggrieved party"; however, in light of the significant overlap between Sections 553 and 605, the definition from Section 605 is instructive. Moreover, the fact that Plaintiff is a "person aggrieved" under Section 553 has been confirmed by case law. J & J Sports Productions, Inc. v. Rezdndiz, 2008 WL 5211288, *2 (N.D.Ill. Dec. 9, 2008) (holding that Plaintiff was a person aggrieved under 47 U.S.C. § 553); PPV Connection, Inc. v. Grau-Alvarez, 2009 WL 5064476, *4 (D. Puerto Rico Dec. 16, 2009). In this case, Plaintiff had the exclusive nationwide distribution rights to the Program, and thus is squarely a "person aggrieved" within the meaning of 47 U.S.C. §§ 605 and 553.

6.  Plaintiff had the exclusive commercial distribution rights for the Program and any commercial establishment in this country that wished to distribute the Program was obligated to contract with Plaintiff. Defendants did not take this route. There simply was no other way for defendants to broadcast the Program at The Cigar Lounge lawfully.

7.  To establish liability under 47 U.S.C. § 605 and/or § 553 Plaintiff must establish that the Defendants unlawfully exhibited, published or divulged its privileged communication. See 47

---

[1] For purposes of assessing damages, district courts have found that a signal pirate violates 47 U.S.C. § 605 if he intercepts a satellite broadcast, and a signal pirate violates 47 U.S.C. § 553 if he intercepts a cable broadcast. To the extent Plaintiff must opt for judgment under either statute, Plaintiff requests that liability be found under 47 U.S.C. § 605. See J & J Sports Productions, Inc. v. Basto, 2011 WL 566843 (N.D.Cal. Feb. 14, 2011) ("In cases in which plaintiffs have proven violations under both § 605 and § 553 courts in this district have declined to award cumulative damages, and have awarded the higher statutory award permitted under § 605. . . .").

U.S.C. § 605; 47 U.S.C. § 553. As noted above, these are strict liability statutes and thus it is *not* necessary for Plaintiff to establish willfulness concerning the exhibition in order to establish liability. See 47 U.S.C. § 605(e)(3)(C)(iii); 47 U.S.C. § 553(c)(3)(C) . In that regard, even if Defendants were unaware of their violation, or if he did not intend to broadcast Plaintiff's Program unlawfully, he would still be liable. See Pages 3-4, supra.

Points Of Law - Conversion.

1. "In California, conversion has three elements: ownership or right to possession of property, wrongful disposition of the property right and damages." G.S. Rasmussen & Assoc. v. Kalitta Flying Serv., 958 F.2d 896, 906 (9th Cir. 1992). The specific type of property in question here, i.e., the exclusive right to distribute a closed-circuit program, has been found to be property for purposes of a conversion cause of action. Don King Productions/Kingvision v. Lovato, 911 F.Supp. 419, 423 (N.D.Cal.1995); Directv, Inc. v. Pahnke, 405 F. Supp. 2d 1182, 1189-90 (E.D. Cal. 2005).

2. In this case, Plaintiff had the exclusive commercial distribution rights over the Program, and, as such, had the right of possession at the time the Program was intercepted by Plaintiff. Under the circumstances, this action is properly classified as a conversion of Plaintiff's property. Courts have frequently found liability for conversion under similar circumstances. See e.g. J & J Sports Productions, Inc. v. Sanchez, 2011 WL 5041022, *3 (S.D.Cal. Oct. 24, 2011); J & J Sports Productions, Inc. v. Paniagua, 2011 WL 996257 (N.D.Cal. March 21, 2011).

3. California state courts have reached the same conclusion. In Fremont Ind. Co. v. Fremont Gen. Corp, 148 Cal.App.4th 97 (2007), the California Court of Appeal observed the "traditional" rule of conversion and decided that whether conversion may apply to intangible property depends on the nature of the property. Id. at 124-26 (indeed, the intangible property in Fremont, the misappropriation of financial assets, was found to give rise to a conversion claim). The rationale of Freeman, when coupled with Pahnke and Don King, establishes that a claim for conversion is proper.

4. This is also confirmed by other California state case law. In A & M Records, Inc. v. Heilman, 75 Cal.App.3d 554 (1977), the plaintiff recorded and sold music on phonographs and magnetic tapes. Id. at 560. The defendant duplicated plaintiff's recordings and sold them without providing compensation to A & M. Id. The court found that this misappropriation of the intangible

property of another (which it called "piracy") gave rise to a claim for conversion.  Id. at 570.  The A & M court focused on the content of what was being pirated; this is precisely the situation that exists with respect to Plaintiff's programming herein.

Points Of Law - Unfair Business Practices Act.

1. The remedies provided under the Unfair Competition Law are cumulative.  Cal. Bus & Prof. Code § 17205.   In addition, the remedial power granted under the UCL is "extraordinarily broad . . . [and] the Legislature has given the courts the power to fashion remedies to prevent their use or employment' in whatever context they may occur."  Hewlett v. Squaw Valley Ski Corp., 54 Cal.App.4th 499, 539-40 (1997) (superseded by statute on other grounds).

2. Pursuant to Section 17203, this Court may grant injunctive relief and may make "such orders or judgments . . . as may be necessary . . . to restore to any person in interest any money or property which may have been acquired by means of such unfair competition." Cal. Bus. & Prof. Code § 17203.  By its very terms, therefore, the UCL permits the payment of money to a Plaintiff.  With respect to the ability to grant injunctive relief, this power "necessarily includes the authority to make orders to prevent such activities from occurring in the future." Hewlett, 54 Cal.App.4th at 539-40.

3. In this case, therefore, the Court may enjoin Defendants from broadcasting any further Programs and may award Plaintiff money that the Defendants acquired through means of unfair competition.  To determine whether a plaintiff is entitled to restitution, the Court looks to the test set out in Korea Supply Company v. Lockheed Martin Corp., 29 Cal.4th 1134 (2009).  This analysis looks first to whether plaintiff seeks the return of something that once was in its possession and, if not, determines whether the Plaintiff had a "vested interest" in the property.  National Rural Telecommunications Cooperative v. Directv, 319 F.Supp.2d 1059, 1079-80 (C.D. Cal. 2003).

4. In Korea Supply Company, it was held that the remedy sought by the plaintiff was not restitutionary because the plaintiff did not have an ownership interest in the money it sought to recover from the defendants.  Id.  In reaching this conclusion, the court observed that the plaintiff had not given any money to defendant Lockheed Martin but, rather, that Lockheed Martin had received its profits from a third party (the Republic of Korea).  Korea Supply Company, 29 Cal.4th at

1149, 131 Cal.Rptr.2d 29.  In that regard, the court concluded that, "Any award that plaintiff would recover from defendants would not be restitutionary as it would not replace any money or property that defendants took directly from plaintiff."  Id.  Here, there is no such third party.  Defendant took his profits directly from Plaintiff.  The interest of Plaintiff is not an expectancy contingent on third party actions.  Moreover, the money or funds belonging to Plaintiff may be directly traced to the night of the broadcast of the Program.  Plaintiff's interest is the money to which it is entitled as a result of the broadcast of its program.

     5.     While Section 17200 itself does not permit the recovery of attorney's fees, see Stevens v. Mavent, Inc., 2008 WL 2824956, *9 (C.D. Cal. July 21, 2008), Plaintiff may be awarded attorney's fees for a Section 17200 claim as a "private attorney general" pursuant to California Code of Civil Procedure Section 1021.5.  See Hewlett, 54 Cal.App.4th at 543-45. The determination of the Section 1021.5 factors are "within the sound discretion of the trial court[.]"  Ryan v. California Interscholastic Federation, 94 Cal.App.4th 1033, 1044 (2001).

     6.     Section 1021.5 provides:

Upon motion, a court may award attorney's fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement, or of enforcement by one public entity against another public entity, are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any.  Cal. Civ. Code § 1021.5.

Three criteria are required to support an award of attorney's fees under § 1021.5. First, the action resulted in the enforcement of an important right affecting the public interest; second, a significant benefit was conferred on the general public or a large class of persons; and third, the necessity and financial burden of private enforcement were such as to make the award appropriate.

Mannick v. Kaiser Foundation Health Plan, Inc., 2007 WL 2892647, *5 (N.D.Cal. Sept. 28, 2007) (citation omitted).

///

7. The determination of these factors is "within the sound discretion of the trial court and that discretion shall not be disturbed on appeal absent a clear abuse . . . In other words, an attorney fees award under Section 1021.5 will only be reversed where it is clearly wrong or has no reasonable basis." <u>Ryan</u>, 94 Cal.App.4th at 1044 (internal citations/quotations omitted).

8. With respect to the first factor, the court should ascertain whether the right involved is of sufficient societal importance. <u>Marini v. Municipal Court</u>, 99 Cal.App.3d 829, 836-37 (1979). In this case, the right is of such importance that Congress specifically enacted legislation permitting civil litigants to bring actions against signal pirates.

9. With respect to the second factor, while the public derives a benefit any time "illegal private or public conduct is rectified," <u>Woodland Hills Residents Assn., Inc. v. City Council</u>, 23 Cal.3d 917, 938 (1979), for purposes of an award of attorney's fees under Section 1021.5, this benefit must be significant <u>Id.</u>  Here, the benefits to the public in the curbing of piracy are significant and extend well beyond simply ensuring the enforcement of a law. Piracy is a significant problem in the United States. As a result of rampant piracy, Plaintiff has been forced to retain independent auditors at considerable expense, and this necessarily has resulted in increased costs of programming to the general public. The more piracy is stamped out, the more likely it is that the public in general will benefit by lower prices for programming and by the receipt of additional tax revenues. <u>Id.</u>  In addition, as has been observed by the federal courts, "Anyone who misappropriates the goods, services or ideas of another without payment of the royalty or other fee which is charged acts against the *public interest* and not in support of it." <u>TKR Cable Co. v. Cable City Corp.</u>, 1996 WL 465508, *11 (D.N.J. July 29, 1996).

10. With respect to the third factor, the necessity of private enforcement exists because the state simply does not have the resources to control the type of piracy at issue in this case. It takes specialized knowledge to ascertain who has the authority to broadcast Plaintiff's programming, and only Plaintiff has this knowledge. While a representative of the state may be able to enter a commercial establishment and determine whether they are broadcasting a particular program, as a practical matter the state has no ability to determine whether that program is being broadcast legally or illegally. Similarly, the private burden of litigation is high. While Plaintiff has had occasion to bring similar cases in the past, the damages awards are often quite low. This is especially true in

light of the statutory maximums authorized by Congress. Notwithstanding the opportunity to award significant damages, often the damage awards are barely sufficient to cover the costs of suit.

Points Of Law – Individual Liability.

1. The Cigar Lounge is not a corporation, and has no separate existence aside from the individual defendant. See J & J Sports Productions Inc. v. Betancourt, 2009 WL 3416431, *2 (S.D. Cal. Oct. 20, 2009); In this case, the defendants *were* The Cigar Lounge. Indeed, this is confirmed by the City of West Hollywood and the Directv account (No. 074860131). Defendants are the sole licensees for the business license issued by the City of West Hollywood and the Directv account issued to The Cigar Lounge, and defendants Peal Jackson a/k/a Pearl Mari Jackson and Annette Golden are co-owners of the business license and Directv account.

Points Of Law - Damages.

1. Plaintiff is entitled to statutory damages under 47 U.S.C. § 605(e)(3)(C)(i)(II). That Section provides for a minimum award of $1,000.00 and a maximum award of $10,000.00 for each violation. Id. Plaintiff is entitled to the maximum $10,000 award. Plaintiff is also entitled to an additional "enhanced" damages award pursuant to Section 605(e)(3)(C)(ii). That Section provides for an enhancement up to $100,000.00 where "the violation was committed willfully and for the purposes of direct or indirect commercial advantage or private financial gain . . . ." 47 U.S.C. § 605(e)(3)(C)(ii).[2]

2. Maximum statutory damages awards have frequently been made under similar circumstances. J & J Sports Productions, Inv. v. Pollard, 2011 WL 445803 (E.D.Cal. Feb. 8, 2011) (awarding $10,000 in statutory damages and $30,000 in enhanced damages against establishment showing event on four televisions with 23-25 people present); Joe Hand Promotions, Inc. v. Gonzales, 2010 WL 3245367, *2 (E.D.Cal. Aug. 17, 2010) (awarding $10,000 in statutory damages (plus $30,000 in enhanced damages) when there were only 15 persons present in an establishment with a capacity of 35) ; J & J Sports Productions, Inc. v. Esquivel, 2008 WL 4657741 (E.D.Cal. Oct. 20, 2008) (awarding $20,000 in statutory damages and $10,000 in enhanced damages when there

---

[2] If the Court were to find that judgment is more appropriate under 47 U.S.C. § 553, that Section provides for a statutory award between $250.00 and $10,000 and an enhancement up to $50,000. 47 U.S.C. § 553(c)(3)(A)(ii); 47 U.S.C. § 553(c)(3)(A)(ii). The factors to be considered are the same whether damages are evaluated under Section 605 or Section 553.

were fewer than 50 patrons present, the program was being shown on only one television screen, and the court concluded that defendant' actions had a "relatively small impact").

3. In J & J Sports Productions Inc. v. Olivares, 2011 WL 587466 (E.D.Cal. Feb 9, 2011), the district court awarded $10,000 in statutory damages and $50,000 in enhanced damages against establishment showing the event on three televisions with 60+ people present. In Olivares, the district court actually concluded that the circumstances demonstrated that the violation "likely had a *minimal* impact." Olivares, 2011 WL 587466 at *3 (emphasis added).

4. A primary goal of piracy awards is deterrence, both specific and general. As stated in J & J Sports Productions, Inc. v. Marcaida, 2011 WL 2149923 (N.D.Cal. May 31, 2011):

> [T[he Court notes that signal piracy is a pervasive and increasing problem and that a primary purpose of § 605 is to deter such conduct. . . . The need to deter future piracy by Defendant and others requires an award substantially higher than the cost Defendant would have incurred to purchase a license to lawfully exhibit the program.

2011 WL 2149923 at *4; see also Joe Hand Promotions, Inc. v. Gamino, 2011 WL 66144, *4 (E.D.Cal. Jan. 10, 2011) ("the amount of damages awarded should be in an amount that is adequate to deter these Defendants and others from committing similar acts in the future").

5. Defendant acted willfully and for the purposes of direct or indirect commercial advantage or private financial gain. J & J Sports Productions, Inc. v. Garcia, 2009 WL 2567891, *4 (S.D.Tex. Aug. 14, 2009) ("The Defendant must have engaged in a deliberate act since signals do not descramble spontaneously, nor do television sets connect themselves to cable distribution systems.") (quotation omitted); Joe Hand Promotions, Inc. v. Martinez, 2008 WL 4619855, *6 (S.D.N.Y. Oct. 17, 2008) ("The acquisition of an encrypted signal by defendants undoubtedly required some affirmative actions that imply both a degree of technical sophistication and a desire to obtain a benefit to which defendants were not entitled.").

6. In J & J Sports Productions, Inc. v. Ho, 2010 WL 3912179 (N.D.Cal. Oct. 5, 2010), while discussing enhanced damages, the Northern District noted that "there [was] no evidence that Defendant advertised the fight, charged a cover charge, or had a minimum purchase requirement." Id. at *2. Nonetheless, the Court agreed that the defendant "must have undertaken some specific

wrongful actions to intercept the Program," and concluded that, "[a]lthough not egregious, the[] facts do suggest that Defendant acted willfully for commercial advantage and private financial gain."

7. While each case must be evaluated under its own facts, maximum enhanced damages awards have been awarded in piracy cases. E.g. J & J Sports Productions, Inc. v. Ferreyra, 2008 WL 4104315 (E.D.Cal. Aug. 28, 2008); J & J Sports Productions, Inc. v. Crawford, Case No. 5:11-cv-00453-L (W.D. Okla. Dec. 14, 2011) (Docket No. 15); J & J Sports Productions, Inc. v. Cuellar, Case No. 5:10-cv-01162-C (W.D.Okla. April 14, 2011) (Docket No. 13); J & J Sports Productions, Inc. v. Lang, 2008 WL 2917165, *1 (W.D.N.Y. July 24, 2008).

8. Plaintiff recognizes that there are examples of smaller awards. One case, Joe Hand Promotions v. Streshly, 655 F.Supp.2d 1136 (S.D.Cal. 2009), bears special mention. In Streshly, the Court denied an application for default judgment (filed by Plaintiff's counsel herein) because the Court concluded that Plaintiff had "overreached." Id. at 1139. Thereafter, upon the instruction of the district court, Plaintiff submitted a renewed application for default judgment and an entirely new brief. In fact, in his second Order (which granted Plaintiff's Application for Default Judgment), the Court acknowledged that:

> In its amended motion for default judgment, Plaintiff abandons [previously cited] cases and brings to the Court's attention a good number of cases in which heftier awards were granted, ranging, roughly, from $20,000 to $60,000. With the exception of approximately five cases from the Eastern District of California, none of them are Ninth Circuit cases. To be fair, however, each of these cases supports Plaintiff's contention that $10,000 in statutory damages under § 605(e)(3)(C)(i)(I) *and* a sizeable enhancement under § 605(e)(3)(C)(ii) is plausible, if not appropriate, in this case.

Joe Hand Promotions v. Streshly, Case No. 08-cv-02390-LAB-LSP, *2-3 (S.D.Cal. Oct. 20, 2009) (Docket No. 18) (emphasis added). Moreover, even though the Streshly Court took issue with some of Plaintiff's arguments regarding the invidious nature of piracy, it still awarded $6,000 in enhanced damages for a one-time offender who did not charge a cover or a premium for food and drinks, and who broadcast the program in question on one television. Id. at 6.

///

9. Small piracy awards not only do not accomplish the stated goal of deterrence, they likely have the opposite effect. It is virtually impossible for Plaintiff to find every signal pirate, and such minimum awards only encourage the repeated unlawful interception of Plaintiff's programming. See J & J Sports Productions, Inc. v. Castrillon, 2009 WL 1033364, *3 (E.D.N.Y. April 16, 2009), ("Absent substantial financial penalties, the defendant will likely continue to illegally display the plaintiff's programming and other such establishments will follow suit. . . . The plaintiff cannot practicably investigate all these infractions, nor should they be expected to do so."). As noted by the Castrillon Court, "the defendant must be held accountable for an amount significant enough to deter such conduct. Absent such a deterrent, the defendant and other potential infringers will be encouraged to violate the law, as infringement would be more cost effective than contracting with the plaintiff." Id. The $250 penalty imposed on Defendant herein is the type of penalty that makes it cost effective for defendants to pirate programming. See Fallaci v. New Gazette Literary Corp., 568 F.Supp. 1172, 1174 (S.D.N.Y. 1983) (without substantial penalties, defendants "would be encouraged to violate the law knowing the full extent of their liability would not exceed what they would have to pay for a license on the open market.").

Points Of Law - Attorneys' Fees.

1. 47 U.S.C. § 605 mandates an award of costs and attorneys' fees to an aggrieved party. Specifically, the Section states that the Court, "*shall direct* the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails." 47 U.S.C. § 605(e)(3)(B)(iii) (emphasis added). (An attorneys' fees award under 47 U.S.C. § 553 is discretionary.).

///
///
///
///
///
///
///
///

**(c) Key Evidence In Support Of Each Of The Claims.**

| | |
|---|---|
| 1. Plaintiff's May 1, 2010 *Program* was witnessed at the The Cigar Lounge at 8420 Sunset Blvd., West Hollywood, CA 90069, Saturday, May 1, 2010 | 1. Auditor Kim's Affidavit. |
| 2. Plaintiff J & J Sports Productions, Inc. secured the commercial (closed-circuit) distribution rights to May 1, 2010 The Floyd Mayweather v. Shane Mosley, Welterweight Championship Fight *Program* | 2. Distribution Agreement. |
| 3. The May 1, 2010 *Program* was subject to a closed-circuit (commercial) rate card | 3. Please see Rate Card. |
| 4. Plaintiff's complaint raises three causes of action:<br>a.) Violation of 47 U.S.C. § 605;<br>b.) Violation of 47 U.S.C. § 553;<br>c.) Conversion;<br>d.) Violation Cal. B&P §17200 | 4. See Plaintiff's Complaint, Docket Entry #1 |

**(d) A Summary Statement Of The Counterclaims And Affirmative Defenses Defendant Has Pleaded And Plans To Pursue.**

Defendants have not asserted any counterclaims.

///
///
///
///
///
///
///
///
///

**(e) Brief Description Of The Key Evidence Relied On In Opposition To Each Counterclaim And Affirmative Defense.**

| | |
|---|---|
| 1. Plaintiff's May 1, 2010 *Program* was witnessed at the The Cigar Lounge at 8420 Sunset Blvd., West Hollywood, CA 90069, Saturday, May 1, 2010 | 1. Auditor Kim's Affidavit. |
| 2. Plaintiff J & J Sports Productions, Inc. secured the commercial (closed-circuit) distribution rights to May 1, 2010   The Floyd Mayweather v. Shane Mosley, Welterweight Championship Fight *Program* | 2. Distribution Agreement. |
| 3. The May 1, 2010 *Program* was subject to a closed-circuit (commercial) rate card | 3.   Please see Rate Card. |
| 4. Plaintiff's complaint raises three causes of action:<br>e.) Violation of 47 U.S.C. § 605;<br>f.) Violation of 47 U.S.C. § 553;<br>g.) Conversion;<br>h.) Violation Cal. B&P §17200 | 4. See Plaintiff's Complaint, Docket Entry #1 |

**(f) Anticipated Evidentiary Issues.**

Plaintiff is unaware of any evidentiary issues in dispute.

**(g) Issues Of Law.**

Plaintiff is unaware of any legal issues presently uncontroverted.

**(h) Bifurcation Of Issues.**

Plaintiff does not believe there are issues in this case where bifurcation is necessarily appropriate and that the trial in this action shall focus on damages as well as liability.

**II.     JURY - NON-JURY**

The Court will set a jury trial date at a later time.

///

///

### III. ATTORNEYS' FEES

If Plaintiff prevails, Plaintiff will seek costs and attorneys' fees pursuant to the provisions of Title 47 USC §553 and §605. Plaintiff intends to make such a motion an award of attorneys' fees within thirty (30) days after, entry of final judgment pursuant to Local Rule 54-293.

### IV. ABANDONED ISSUES

Not Applicable.

### V. WITNESSES

Please see Plaintiff's Witness List.

### VI. JOINT EXHIBITS - SCHEDULES AND SUMMARIES

Please see Joint Exhibit List.

Respectfully submitted,

Dated: November 12, 2015        */s/ Thomas P. Riley*
**LAW OFFICES OF THOMAS P. RILEY, P.C**.
By:  Thomas P. Riley
Attorneys for Plaintiff
J & J Sports Productions, Inc.

///
///
///
///
///
///
///

## PROOF OF SERVICE (SERVICE BY MAIL)

I declare that:

I am employed in the County of Los Angeles, California. I am over the age of eighteen years and not a party to the within cause; my business address is First Library Square, 1114 Fremont Avenue, South Pasadena, California 91030-3227. I am readily familiar with this law firm's practice for collection and processing of correspondence/documents for mail in the ordinary course of business.

On November 12, 2015, I caused to serve the following documents entitled:

**PLAINTIFF'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

On all parties referenced by enclosing a true copy thereof in a sealed envelope with postage prepaid and following ordinary business practices, said envelope was addressed to:

Elizabeth A. Bell, Esq.                      Attorneys for Defendants
Elizabeth A. Bell Law Office                 Pearl Jackson and Annette Golden
8335 Sunset Blvd., Ste. 221
West Hollywood, CA 90069

The fully sealed envelope with pre-paid postage was thereafter placed in our law firm's outbound mail receptacle in order that this particular piece of mail could be taken to the United States Post Office in South Pasadena, California later this day by myself (or by another administrative assistant duly employed by our law firm).

I declare under the penalty of perjury pursuant to the laws of the United States that the foregoing is true and correct and that this declaration was executed on November 12, 2015, at South Pasadena, California.

Dated: November 12, 2015                     */s/ Vanessa Morales*
                                             **VANESSA MORALES**